**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

INFUSION MEDIA, INC., *et al.*,

Defendants.

**Civil Action No. 2:09-cv-01112-GMN-LRL**

**STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AS TO INFUSION MEDIA, INC.; WEST COAST INTERNET MEDIA, INC.; TWO WARNINGS, LLC; TWO PART INVESTMENTS, LLC; PLATINUM TELESERVICES, INC.;  JONATHAN EBORN; STEPHANIE BURNSIDE; MICHAEL McLAIN MILLER; AND TONY NORTON**

This matter comes before the Court on the stipulation of Plaintiff, the Federal Trade Commission ("FTC" or the "Commission"), and Defendants Infusion Media, Inc.; West Coast Internet Media, Inc.; Two Warnings, LLC; Two Part Investments, LLC; Platinum Teleservices, Inc.; Jonathan Eborn; Stephanie Burnside; Michael McLain Miller; and Tony Norton (collectively, "Defendants").  On June 22, 2009, the Commission filed a Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") in this matter, alleging violations of Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).  The Commission and Defendants have agreed to the entry of this Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief ("Order") as a settlement of the claims against Defendants alleged in the Complaint.  Accordingly, the Court makes the following findings and enters judgment in

this action as set forth below:

## FINDINGS

1.      This Court has jurisdiction of the subject matter of this case and over the parties.  The District of Nevada is a proper venue for this action.

2.      The activities of Defendants described in the Complaint were in or affecting commerce within the meaning of the FTC Act, 15 U.S.C. §§ 44, 45.

3.      If the factual allegations therein are accepted as true, the Complaint states a claim upon which relief may be granted against Defendants.

4.      Defendants enter into this Order freely and without coercion.  Defendants acknowledge that they have each read, understand, and are prepared to abide by the provisions of this Order.

5.      The parties stipulate and agree to this Order, without trial or adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the Complaint to the date of this Order.

6.      By entering into this Order, Defendants do not admit to the allegations set forth in the Complaint, other than the jurisdictional facts.

7.      Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order.

8.      Each party shall bear its own costs and attorney fees.  Defendants further waive and release any claims they may have against the Commission, its employees, representatives, or agents.  Defendants agree that this Order does not entitle them to seek or to obtain attorney fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, *amended by* Pub. L. No. 104-121, 110 Stat. 847, 863–64 (1996), and they further waive any rights to attorney fees that may arise under said provision of law.

9.      This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any proceedings that the Commission may initiate to enforce this Order.

10.     This Order should not be construed as providing for payment of a fine, penalty, punitive assessment, or forfeiture, and the monetary judgment provided herein is based on the amount of money the Commission could have sought as restitution for consumers if the parties had not stipulated to this Order.

11.     Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this  Order, the following definitions shall apply:

1.      "Asset" means any legal or equitable interest in, right to, or claim to, any real and personal property, including but not limited to, "goods," " instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," "notes" (as these terms are defined in the Uniform Commercial Code), and all chattel, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, reserve funds, and cash, wherever located.

2.      "Assisting Others" includes but is not limited to:  (a) performing customer service functions, including but not limited to, receiving or responding to consumer complaints; (b) developing or providing or arranging for the development or provision of sales scripts and other marketing materials; (c) providing names of, or arranging for the provision of, names of potential customers; or (d) performing marketing services of any kind.

3.      "Charge" means any amount charged or debited to a consumer's credit card, debit card, checking, savings, share or similar financial account, or collected from a

1    consumer by any other method.

2        4.     "Clear and Conspicuous" or "Clearly and Conspicuously" mean that:

3               a.     in print communications, the disclosure shall be in a type size and

4                     location sufficiently noticeable for an ordinary consumer to read

5                     and comprehend it, in print that contrasts with the background

6                     against which it appears; and in multi-page print communications,

7                     the disclosure shall appear on the cover or first page;

8               b.     in communications disseminated orally, the disclosure shall be

9                     delivered in a volume and cadence sufficient for an ordinary

10                    consumer to hear and comprehend it; and

11               c.     in Internet communications, the disclosure shall be made next to

12                    any advertised price or cost (including free), and where consumers'

13                    financial account information is required, without the use of pop-up

14                    windows or hyperlinks to other electronic pages to display Material

15                    information.

16       5.     "Corporate Defendants" means Infusion Media, Inc.; West Coast Internet

17 Media, Inc.; Two Warnings, LLC; Two Part Investments, LLC; and Platinum

18 Teleservices, Inc., and their successors and assigns.

19       6.     "Defendants" means all of the Individual Defendants and the Corporate

20 Defendants.

21       7.     "Defendants' Financial Statements" means (a) the letter describing the

22 assets of the Receivership Defendants signed by the Individual Defendants and dated

23 August 3, 2009 and (b) the Federal Trade Commission Financial Statement

24 questionnaires concerning each of the Receivership Defendants, signed by the Individual

25

26                             -4-

Defendants, and dated August 13, 2009; (c) the Federal Trade Commission Financial Statement questionnaire concerning Jonathan Eborn and Stephanie Burnside, signed by Defendants Eborn and Burnside, and dated July 13, 2009; (d) the Federal Trade Commission Financial Statement questionnaire concerning Jonathan Eborn and Stephanie Burnside, signed by Defendants Eborn and Burnside, and dated June 6, 2010; (e) the Federal Trade Commission Financial Statement questionnaire concerning Michael McLain Miller, signed by Defendant Miller, and dated July 15, 2009; (f) the Federal Trade Commission Financial Statement questionnaire concerning Michael McLain Miller, signed by Defendant Miller, and dated June 8, 2010; (g) the Federal Trade Commission Financial Statement questionnaire concerning Tony Norton, signed by Defendant Norton, and dated July 14, 2009; and (h) the Federal Trade Commission Financial Statement questionnaire concerning Tony Norton, signed by Defendant Norton, and dated June 9, 2010, including any amendments.

8.     "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

9.     "Individual Defendants" means Jonathan Eborn, Stephanie Burnside, Michael McLain Miller, and Tony Norton.

10.     "Material" means likely to affect a person's choice of, or conduct regarding, goods or services.

11.     "Negative Option Feature" means, in an offer or agreement to sell

1  or provide any goods or services, a provision under which the customer's silence or

2  failure to take an affirmative action to reject goods or services or to cancel the agreement

3  is interpreted by the seller or provider as acceptance of the offer.

4      12.    "Person" means a natural person, an organization or other legal entity,

5  including a corporation, partnership, sole proprietorship, limited liability company,

6  association, cooperative, or any other group or combination acting as an entity.

7      13.    "Preauthorized Electronic Fund Transfer," as defined by the Electronic

8  Fund Transfer Act, 15 U.S.C. § 1693a(9), means an electronic fund transfer authorized

9  in advance to recur at substantially regular intervals.

10     14.    "Receiver" shall mean Robert G. Wing, the receiver appointed in this

11 action for the Receivership Defendants.

12     15.    "Receivership Defendants" means the Corporate Defendants.

13     16.    "Representatives" means Defendants' successors, assigns, officers, agents,

14 servants, employees, or attorneys, and any Person or entity in active concert or

15 participation with them who receives actual notice of this Order by personal service or

16 otherwise.

## ORDER

## I.

## BAN ON NEGATIVE OPTION PROGRAMS

20     **IT IS THEREFORE ORDERED** that the Defendants are hereby permanently

21 restrained and enjoined from engaging or participating in the advertisement, marketing,

22 promotion, offering for sale, or sale of any product or service with a Negative Option

23 Feature, whether acting directly or through any entity, corporation, subsidiary, division,

24 affiliate, or other device.  Nothing in this Order shall be read as an exception to this

25

26

1  Section I.

2  <div align="center">**II.**</div>

3  <div align="center">**PROHIBITED BUSINESS ACTIVITIES**</div>

4  **IT IS FURTHER ORDERED** that, in connection with the advertising,

5  marketing, promotion, offering for sale, or sale of any product or service, the Defendants

6  and their Representatives, whether acting directly or through any entity, corporation,

7  subsidiary, division, affiliate, or other device, are hereby permanently restrained and

8  enjoined from failing to disclose, Clearly and Conspicuously, the Material terms and

9  conditions of the offer, including but not limited to

10      A.    All products and/or services that are part of the sales offer, including but

11            not limited to products and/or services provided by third parties;

12      B.    That consumers' credit or debit account information will be used to Charge

13            consumers for all products and/or services; and

14      C.    The cost and quantity of all products and/or services.

15  <div align="center">**III.**</div>

16  <div align="center">**PROHIBITED REPRESENTATIONS**</div>

17  **IT IS FURTHER ORDERED** that, in connection with the advertising,

18  marketing, promotion, offering for sale, or sale of any product or service, Defendants

19  and their Representatives, whether acting directly or through any entity, corporation,

20  subsidiary, division, affiliate or other device, are hereby restrained and enjoined from

21      A.    Making, expressly or by implication,

22            1.    Any Material representation about the benefits, performance, or

23                  efficacy of such product or service, including but not limited to

24                  representations about income, earnings, or profits that consumers

25

26  <div align="center">-7-</div>

1    who order such product or service are likely to earn, unless the

2    representation is true and, at the time that the representation is

3    made, the Defendants possess and rely upon competent and reliable

4    evidence that substantiates the representation; or

5    2.    Any false or misleading statement or representation of Material fact

6    about such product or service, including but not limited to

7    i.    Falsely representing an affiliation with, or endorsement or

8    sponsorship by, any person, government entity, or business

9    entity, including but not limited to Google Inc.;

10    ii.    Falsely representing the total costs to purchase, receive, or

11    use, and the quantity of, such products or services;

12    iii.    Falsely representing any Material aspect of the nature or

13    central characteristics of such product or service; and

14    iv.    Falsely representing, expressly or by implication, any

15    Material aspect of the nature or terms of the refund,

16    cancellation, exchange, or repurchase policies applicable to

17    such product or service;

18    B.    Assisting Others in making, expressly or by implication, a representation

19    enumerated in Section III.A.1 under circumstances in which the

20    Defendants know or consciously avoid knowing that the representation is

21    untrue or unsubstantiated; or

22    C.    Assisting Others in making, expressly or by implication, a representation

23    enumerated under Section III.A.2 under circumstances in which the

24    Defendants know or consciously avoid knowing that the statement or

25

26    -8-

1   representation is false or misleading.

2                                   **IV.**

3   **ACTIVITIES PROHIBITED PURSUANT TO THE ELECTRONIC FUND**
                            **TRANSFER ACT**

4

5           IT IS FURTHER ORDERED that the Defendants and their Representatives,

6   whether acting directly or through any entity, corporation, subsidiary, division, affiliate,

7   or other device, or any of them, in connection with any consumer who purchases any

8   product or service subsequent to the date of this Order and who uses a debit card or other

9   means of electronic funds transfer, are hereby restrained and enjoined from failing to

10  obtain written authorization for Preauthorized Electronic Fund Transfers from the

11  consumer's account before initiating any Preauthorized Electronic Fund Transfer and

12  from failing to provide a copy of the written authorization to the consumer, as required

13  by Section 907(a) of EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation

14  E, 12 C.F.R. § 205.10(b), and as more fully set out in Section 205.10 of the Federal

15  Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I,

16  or as they may hereafter be amended.

17                                  **V.**

18  **PROHIBITIONS AGAINST DISCLOSURE OF CUSTOMER INFORMATION**

19          **IT IS FURTHER ORDERED** that the Defendants and their Representatives are

20  permanently restrained and enjoined from

21          A.      disclosing, using, or benefitting from customer information, including the

22  name, address, telephone number, e-mail address, social security number, other

23  identifying information, or any data that enables access to a customer's account

24  (including a credit card, bank account, or other financial account), of any person that was

25  obtained by any Defendant in connection with the sale of any product or service during

26                                  -9-

1   the period from January 1, 2007, through the date of entry of this Order; and

2          B.      failing to dispose of such customer information in all forms in their

3   possession, custody, or control within thirty (30) days after entry of this Order.  Disposal

4   shall be by means that protect against unauthorized access to the customer information,

5   such as by burning, pulverizing, or shredding any papers, and by erasing or destroying

6   any electronic media, to ensure that the customer information cannot practicably be read

7   or reconstructed.

8          *Provided, however*, that customer information need not be disposed of, and may

9   be disclosed, to the extent requested by a government agency or required by a law,

10  regulation, or court order.

11                                          **VI.**

12              **MONETARY JUDGMENT AND SURRENDER OF ASSETS**

13         **IT IS FURTHER ORDERED** that judgment is hereby entered in favor of the

14  Commission and against Defendants, jointly and severally, in the amount of twenty-nine

15  million, four hundred thousand, three hundred twenty dollars and fifty-seven cents

16  ($29,497,320.57), except that the judgement against Stephanie Burnside is in the amount

17  of seven hundred forty-one thousand, nine hundred dollars ($741,900), as equitable

18  monetary relief for consumer injury;  *provided, however*, subject to the provisions of

19  Section VIII below, judgment shall be suspended upon Defendants' completion of the

20  requirements stated in Subsections A–C of this Section.

21         A.      Effective upon the entry of this Order, Defendants surrender to the FTC all

22  control, title, dominion, and interest in the following assets:

23                 1.      The Receivership Defendants and all assets of the Receivership

24                         Defendants;

25

26                                          -10-

1    2.    All funds of any of the Defendants in the possession of the
2          Receiver;
3    3.    The 2008 Infiniti FX titled to Stephanie Burnside with Vehicle
4          Identification Number JNRAS08WX8X210535 and Utah title
5          number UT8712155;
6    4.    The 2004 Nissan Titan Crew Cab 4x4 titled to Michael McLain
7          Miller with Vehicle Identification Number 1N6AA07BX4N585815
8          and Utah title number UT8302058;
9    5.    Michael McLain Miller's interest in the 2004 Harley Davidson
10         Road King motorcycle identified in Item 21 of the Federal Trade
11         Commission Financial Statement questionnaire concerning Michael
12         McLain Miller, signed by Defendant Miller, and dated July 15,
13         2009;
14   6.    Michael McLain Miller's interest in the Super Air Natique 230
15         towboat and engine – Boat Hull No. CTC 930 821 809, Engine No.
16         02-601V-01-485866, and  Utah Vessel Registration No. UT
17         5287AF.
18   7.    The gun collection owned by Michael McLain Miller and identified
19         in Item 20 of the Federal Trade Commission Financial Statement
20         questionnaire concerning Michael McLain Miller, signed by
21         Defendant Miller, and dated July 15, 2009. The gun collection
22         includes the following nine (9) guns, including Armalite AR 50
23         with Leupold scope and accessories; Sig. 556 SWAT; Benelli Super
24         Black Eagle II 12 Gauge; Ruger 10/22; Yugo 7.62x39 with folding

-11-

stock; Hi Point 9mm Carbine with scope; Glock 23 40SW with tritium sights; Springfield XD(m) 40SW Limited; Puma model 92.44 mag carbine.

8.   All funds held by Hedgehog Solutions in the name of Infusion Media, Inc.;

9.   All funds held by Process America, Inc., in any account in the name of any Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, or of which any Defendant is an Officer, Director, Member, or Manager, including but not limited to those accounts identified with the DBA designations INCOME INITIATIVE PRO, MONY TREE SYSTEMS, and SAFELOCK ID and identified by account number in Attachment A to this Order;

10.   All funds held by JPMorgan Chase Bank, N.A., in the name of TDN Holdings, Inc., including but not limited to the accounts ending in 9469 and 3537;

11.   All funds held by Family First Federal Credit Union in the name of Michael McLain Miller and/or M. McLain Miller, including but not limited to the account ending in 5832; and

12.   All funds held by America First Credit Union in the name of Stephanie Burnside or in accounts to which Stephanie Burnside is a signatory, including but not limited to the accounts ending in 3785-6 and 6017-5.

B.   Immediately upon entry of this Order, Defendants Eborn and Burnside

-12-

1   shall deliver possession to the Receiver of the assets identified in Section VI.A.3 (the

2   "Eborn-Burnside Assets").  The Receiver is hereby directed to market and sell the

3   Eborn-Burnside Assets.  Defendants Eborn and Burnside shall take all steps necessary to

4   assist the Receiver in the sale of the Eborn-Burnside Assets and shall not add any

5   encumbrances on the Eborn-Burnside Assets.  Defendants Eborn and Burnside shall be

6   responsible for all taxes and fees assessed against them resulting from the sale of the

7   Eborn-Burnside Assets.

8        C.    Immediately upon entry of this Order, Defendant Miller shall deliver

9   possession to the Receiver of the assets identified in Section VI.A.4–7 (the "Miller

10  Assets").  The Receiver is hereby directed to market and sell the Miller Assets.

11  Defendant Miller shall take all steps necessary to assist the Receiver in the sale of the

12  Miller Assets and shall not add any encumbrances on the Miller Assets.  Defendant

13  Miller shall be responsible for all taxes and fees assessed against him resulting from the

14  sale of the Miller Assets.

15       D.    To effect the surrender of the funds identified in Section VI.A.8–9, the

16  Court directs that the entities holding the funds or their successors shall, immediately

17  upon receiving notice of this Order, remit the funds to the Commission by certified

18  check(s) or other guaranteed funds payable to the Federal Trade Commission, Financial

19  Management Office, or by wire transfer in accordance with directions provided by

20  counsel for the Commission.  To the extent any identified third party cannot comply with

21  this Subsection without the assistance of Defendants, such party must, within three (3)

22  business days of receiving this Order, notify such Defendant(s) and counsel for the

23  Commission of its inability to comply.  Such notification shall specify the actions by

24  such Defendant(s) that are necessary to comply with this Order.  Defendants shall

25

26                                    -13-

immediately complete any action necessary to facilitate the identified third party's ability to timely comply with this Subsection, and the failure of such Defendant(s) to complete such action within ten (10) days shall be deemed a violation of the Order and interest at the rate prescribed in 28 U.S.C. § 1961 shall immediately begin to accrue.

E.     Defendants relinquish all dominion, control, and title to the assets surrendered or paid to the fullest extent permitted by law.  Defendants shall make no claim to or demand return of these assets, directly or indirectly, through counsel or otherwise.

F.     Defendants acknowledge and agree that the Receiver has authority under this Order to take any steps necessary to dissolve and wind down the Receivership Defendants and liquidate the assets of the Receivership Defendants, the Eborn-Burnside Assets, and the Miller Assets.

G.     In the event that it is necessary to execute additional documents to transfer or liquidate assets of the Receivership Defendants or any other assets that are to be surrendered under this Order, or to dissolve and wind down the Receivership Defendants, Defendants shall execute such documents within three business days of a request from the Receiver or the FTC.

H.     The Receiver shall remit the assets of the Receivership Defendants, the proceeds of the sale of the Eborn-Burnside Assets, and the proceeds of the sale of the Miller Assets in accordance with the provisions of this Order concerning the Receiver's Final Report and Disbursement.

I.     Any funds transferred or paid to the Federal Trade Commission pursuant to this Section, Section VII.D, Section X.R, Section XII.D.2, or Section XII.F of this Order shall be deposited into a fund administered by the Commission or its agent to be used for

-14-

1    equitable relief, including but not limited to, consumer redress and any attendant

2    expenses for the administration of any redress fund.  In the event that direct redress to

3    consumers is wholly or partially impracticable or funds remain after redress is

4    completed, the Commission may apply any remaining funds to such other equitable

5    relief (including consumer information remedies) as it determines to be reasonably

6    related to the acts and practices alleged in the Complaint.  Any funds not used for such

7    equitable relief shall be deposited in the United States Treasury as disgorgement.

8    Defendants shall have no right to challenge the Commission's choice of remedies under

9    this Section.

10        J.      Defendants agree that the facts as alleged in the Complaint filed in this

11   action shall be taken as true without further proof in any bankruptcy case or subsequent

12   civil litigation pursued by the Commission to enforce its rights to any payment or money

13   judgment pursuant to this Order, including but not limited to a nondischargeability

14   complaint in any bankruptcy case.  Defendants further stipulate and agree that the facts

15   alleged in the Complaint establish all elements necessary to sustain an action pursuant to,

16   and that this Order shall have collateral estoppel effect for purposes of,

17   Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A).

18        K.      In accordance with 31 U.S.C. § 7701, Defendants are hereby required,

19   unless they have done so already, to furnish to the Commission their taxpayer

20   identification numbers (Social Security numbers and employer identification numbers),

21   which shall be used for purposes of collecting and reporting on any delinquent amount

22   arising out of Defendants relationship with the government.

23

24

25

26                                    -15-

# VII.

## ESTABLISHMENT OF ESCROW ACCOUNT
## AND PAYMENT OF TAX LIABILITY

**IT IS FURTHER ORDERED** that upon entry of this Order, the Receiver shall establish an interest-bearing escrow account and/or interest-bearing trust account (the "Escrow Account") for the purpose of paying federal and state personal income taxes due and owing to the Internal Revenue Service/United States Treasury or the State of Utah for (1) Defendants Eborn and Burnside for tax years 2007, 2008, and 2009, up to the amount of the funds identified in Section VI.A.12 and Section VII.B, and (2) Defendant Miller for tax years 2008 and 2009, up to the amount of the funds identified in Section VI.A.11 and Section VII.C, and (3) Defendant Norton for tax years 2007, 2008, and 2009, up to the amount of the funds identified in Section VI.A.10 (all collectively, the "Tax Liability").  The sole signatory to the account shall be the Escrow Agent selected by the Receiver, and access to the funds held in the account shall be solely through the Escrow Agent.

A.     To effect the surrender of the funds identified in Section VI.A.10–12, the Court directs that the entities holding the funds or their successors shall, immediately upon receiving notice of this Order, remit the funds to the Escrow Account by certified check(s), by other guaranteed funds, or by wire transfer in accordance with directions provided by the Receiver.  To the extent any identified third party cannot comply with this Subsection without the assistance of Defendants, such party must, within three (3) business days of receiving this Order, notify such Defendant(s) and counsel for the Commission of its inability to comply.  Such notification shall specify the actions by such Defendant(s) that are necessary to comply with this Order.  Defendants shall immediately complete any action necessary to facilitate the identified third party's ability

1  to timely comply with this Subsection, and the failure of such Defendant(s) to complete

2  such action within ten (10) days shall be deemed a violation of the Order and interest at

3  the rate prescribed in 28 U.S.C. § 1961 shall immediately begin to accrue.

4      B.      Within five (5) days of the entry of this Order, Defendants Eborn and

5  Burnside shall, either acting directly or through counsel, deposit $78,000 (seventy-eight

6  thousand dollars) into the Escrow Account.

7      C.      Within five (5) days of the entry of this Order, the Receiver shall transfer

8  $118,483 (one hundred eighteen thousand, four hundred eighty-three dollars),

9  representing personal funds of Defendant Miller that were placed in the custody of the

10  Receiver, into the Escrow Account from the assets of the Receivership Defendants.

11     D.      Upon the Individual Defendants' provision to the Federal Trade

12  Commission and the Escrow Agent of proof of filed returns concerning the Tax

13  Liability, the Escrow Agent shall remit appropriate payment to the applicable

14  government entity within ten (10) days, provided, however that no such payment shall be

15  made for any tax return submitted to the Escrow Agent after November 1, 2010.  Within

16  fourteen (14) days of any such payment, the Escrow Agent shall provide written proof of

17  payment to the Federal Trade Commission.  Any portion of the Tax Liability not

18  satisfied by the payments made pursuant to this Subsection shall be solely the

19  responsibility of the Individual Defendants.  Upon the earlier of either (1) the payment of

20  the Tax Liability or (2) November 15, 2010, all funds remaining in the Escrow Account

21  shall be remitted by the Escrow Agent to the Federal Trade Commission.

22     E.      To the extent allowable by the Internal Revenue Service and the taxing

23  authorities of any relevant states, the Individual Defendants may take all deductions and

24  other tax benefits that are legally available to them resulting from any payments by one

25

26                                              -17-

1  or more of the Defendants pursuant to Section VI of this Order, *except that* the

2  Individual Defendants may not take any net operating loss carryforwards or otherwise

3  take deductions or tax benefits resulting from such payments with regard to any tax

4  liability other than the Tax Liability as defined in this Order.  If Defendants Eborn,

5  Burnside, Miller, or Norton obtain a credit or refund of any taxes or penalties paid for

6  the Tax Liability, such defendant shall notify the FTC immediately of such credit or

7  refund and pay to the Commission within five (5) days the amount of such credit or

8  refund, together with any interest such defendant has earned in connection with the

9  credit or refund.  Within ten (10) days of a request by the FTC to Defendant Eborn,

10  Burnside, Miller, or Norton, such defendant will complete, date, sign, and submit to the

11  Internal Revenue Service, along with the applicable IRS fee, an IRS Form 4506 directing

12  that a copy of such defendant's federal tax return and any amended return for tax years

13  2007, 2008, and 2009 be sent to the FTC.

14  **VIII.**

15  **RIGHT TO REOPEN**

16  **IT IS FURTHER ORDERED** that:

17      A.    The Commission's agreement to and the Court's approval of this Order are

18  expressly premised upon the truthfulness, accuracy, and completeness of Defendants'

19  Financial Statements, all of which Defendants assert are truthful, accurate, and complete.

20  Defendants and the Commission stipulate that Defendants' Financial Statements provide

21  the basis for the monetary judgment in Section VI of this Order and that the Commission

22  has relied on the truthfulness, accuracy, and completeness of Defendants' Financial

23  Statements.

24      B.    If, upon motion by the Commission, this Court finds that any Defendant(s)

25

26  -18-

1   has (1) materially misstated in Defendants' Financial Statements, the value of any asset,

2   (2) made any material misrepresentation or omitted material information concerning his

3   or her financial condition by failing to disclose any asset that should have been disclosed

4   in Defendants' Financial Statements, or (3) made any other material misstatement or

5   omission in Defendants' Financial Statements, the Court shall terminate, as to the

6   offending Defendant(s), the suspension of the monetary judgment entered in

7   Section VI.A.  The Court, without further adjudication, shall enter a modified judgment

8   holding the offending Defendant(s) liable to the Commission in the amount of

9   $29,497,320.57 for consumer redress, less any amounts turned over to the FTC pursuant

10  to Section VI of this Order, provided however that Stephanie Burnside's liability to the

11  Commission shall not exceed $741,900.  Upon such reinstatement of the monetary

12  judgment, the Court shall make an express determination that the judgment shall become

13  immediately due and payable by the offending Defendant(s), jointly and severally, and

14  the Commission shall be entitled to interest computed from the day of entry of this Order

15  at the rate prescribed under 28 U.S.C. § 1961, as amended, on the unpaid balance.  The

16  Commission shall be permitted to execute on the judgment immediately after the

17  suspension is lifted and engage in discovery in aid of execution.

18       C.    Defendants acknowledge and agree that (1) this monetary judgment is

19  equitable monetary relief, solely remedial in nature, and not a fine, penalty, punitive

20  assessment, or forfeiture; (2) any proceedings instituted under this Section would be in

21  addition to, and not in lieu of, any other civil or criminal remedies as may be provided by

22  law, including any other proceedings that the FTC may initiate to enforce this Order; and

23  (3) all money paid to satisfy the monetary judgment is irrevocably paid for purposes of

24  settlement between the parties.

25

26                                        -19-

D.      Should this Order be modified pursuant to this Section, this Order, in all other respects, shall remain in full force and effect unless otherwise ordered by the Court.

## IX.

## LIFTING OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze against the assets of the Defendants pursuant to the Amended Temporary Restraining Order entered by this Court on June 24, 2009, and by the Preliminary Injunction entered on September 9, 2009, shall be lifted for the sole purpose of transferring assets pursuant to Sections VI and VII of this Order, and shall be dissolved upon the transfer of all such assets.

## X.

## APPOINTMENT OF RECEIVER TO WIND DOWN RECEIVERSHIP DEFENDANTS AND LIQUIDATE ASSETS

**IT IS FURTHER ORDERED** that Robert G. Wing, the Receiver appointed by prior orders of this Court, is hereby appointed Receiver for the Receivership Defendants for the purpose of taking the necessary steps to wind down the businesses of the Receivership Defendants, liquidate the assets of the Receivership Defendants, the Eborn-Burnside Assets, and the Miller Assets, and pay any net proceeds to the FTC to satisfy the monetary judgment in this Order.  In carrying out these duties, the Receiver shall be the agent of this Court, shall be accountable directly to this Court, and is authorized and directed to:

A.      Take any and all steps that the Receiver concludes are appropriate to wind down the Receivership Defendants;

B.      Continue to exercise full control over the Receivership Defendants and continue to collect, marshal, and take custody, control, and possession of all the funds,

property, premises, accounts, documents, mail, and other assets of, or in the possession

or under the control of the Receivership Defendants, wherever situated, the income and

profits therefrom, and all sums of money now or hereafter due or owing to the

Receivership Defendants, with full power to collect, receive, and take possession of all

goods, chattels, rights, credits, monies, effects, lands, leases, books and records, limited

partnership records, work papers, and records of accounts, including computer-

maintained information, contracts, financial records, monies on hand in banks and other

financial institutions, and other papers and documents of other individuals, partnerships,

or corporations whose interests are now held by or under the direction, possession,

custody, or control of the Receivership Defendants ("Receivership Estate");

C.      Continue to have full control over the management and personnel of the

Receivership Defendants, including the authority to remove, as the Receiver deems

necessary or advisable, any director, officer, independent contractor, employee, or agent

of these Defendants from control of, management of, or participation in, the affairs of

these Defendants;

D.      Take all steps necessary or advisable, including issuing subpoenas, to locate

and liquidate all other assets of the Receivership Defendants, cancel the Receivership

Defendants' contracts, collect on amounts owed to the Receivership Defendants, and take

such other steps as may be necessary to wind-down, terminate and dissolve the

Receivership Defendants efficiently;

E.      Take all steps necessary or advisable, including issuing subpoenas, to

identify the name, address, telephone number, date of purchase, program or product

purchased, total amount paid, amount of any full or partial refund or chargeback, and

payment information for consumers who were charged by the Receivership Defendants,

1  and provide the FTC, upon request, with any customer records or other business records

2  of the Receivership Defendants;

3          F.      Make payments and disbursements from the Receivership estate that are

4  necessary or advisable for carrying out the directions of, or exercising the authority

5  granted by, this Order.  The Receiver shall apply to the Court for prior approval of any

6  payment of any debt or obligation incurred by the Receivership Defendants prior to the

7  date of entry of the temporary restraining order in this action, except payments that the

8  Receiver deems necessary or advisable to secure and liquidate assets of the Receivership

9  Defendants, such as rental payments or payment of liens;

10          G.      Continue to perform all acts necessary or advisable to complete an

11  accounting of the Receivership assets, and prevent unauthorized transfer, withdrawal, or

12  misapplication of assets;

13          H.      Continue to maintain accurate records of all receipts and expenditures that

14  he makes as Receiver;

15          I.      Continue to enter into contracts and purchase insurance as advisable or

16  necessary;

17          J.      Continue to defend, compromise, adjust, or otherwise dispose of any or all

18  actions or proceedings instituted in the past or in the future against the Receiver in his

19  role as Receiver, or against the Receivership Defendants, as the Receiver deems

20  necessary and advisable to carry out the Receiver's mandate under this Order;

21          K.      Continue to maintain bank accounts created as designated depositories for

22  funds of the Receivership Defendants, and make all payments and disbursements from the

23  Receivership estate from such an account;

24          L.      Continue to perform all incidental acts that the Receiver deems to be

25

26                                     -22-

advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

M.     Continue to cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency;

N.     Dispose of, or arrange for the disposal of, the records of the Receivership Defendants no later than six months after the Court's approval of the Receiver's final report, except that:

1.     To the extent that such records are reasonably available, the Receiver shall arrange for records sufficient to ascertain the funds that an individual consumer paid to the Receivership Defendants to be retained for a minimum of one year from the entry of this Order, and

2.     If state or local law regulating the Receivership Defendants' business requires the retention of particular records for a specified period, the Receiver shall arrange for such records to be disposed of after the specified period has expired.

To safeguard the privacy of consumers, records containing personal financial information shall be shredded, incinerated, or otherwise disposed of in a secure manner. For records that must be retained, the Receiver may elect to retain records in their original form or to retain photographic or electronic copies so long as said records are: 1) kept in a secure, locked area; 2) stored electronically on a computer network or drive with restricted access or an encrypted electronic storage device; or 3) redacted of all personally identifiable information including dates of birth, Social Security numbers, driver's license numbers or other state identification numbers, passport numbers, financial account numbers, or credit or debit card numbers. *Provided, however*, that the Receiver may not

1   sell, rent, lease, transfer, disclose, use, or otherwise benefit from the name, address,

2   telephone number, credit card number, bank account number, e-mail address, or other

3   identifying information of any person who paid any money to Defendants in connection

4   with the advertising, promotion, marketing, offering for sale, or sale of any product or

5   service, except that the Receiver may disclose such identifying information to a law

6   enforcement agency, or as required by any law, regulation, or court order;

7        O.     Perform all acts necessary to protect, conserve, preserve, and prevent waste

8   or dissipation of the Eborn-Burnside Assets and the Miller Assets until their sale;

9        P.     Sell the Eborn-Burnside Assets and the Miller Assets without further order

10   of the Court;

11        Q.     Enter into agreements in connection with the reasonable and necessary

12   performance of the Receiver's duty to sell the Eborn-Burnside Assets and the Miller

13   Assets, including but not limited to the retention of assistants, agents, or other

14   professionals to assist in the sale of the Eborn-Burnside Assets and the Miller Assets; and

15        R.     Distribute to the Commission, without further order of the Court, the funds

16   received from the sale of the Eborn-Burnside Assets and the Miller Assets.

17   <div align="center">**XI.**</div>

18   <div align="center">**COMPENSATION OF RECEIVER**</div>

19        **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the

20   Receiver, including counsel to the Receiver and accountants, are entitled to reasonable

21   compensation for the performance of duties pursuant to this Order and for the cost of

22   actual out-of-pocket expenses incurred by them, from the assets now held by, in the

23   possession or control of, or which may be received by, the Receivership Defendants.  The

24   Receiver shall apply to the Court for approval of specific amounts of compensation and

25

26   <div align="center">-24-</div>

expenses and must not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XII.

### RECEIVER'S FINAL REPORT AND DISBURSEMENT

**IT IS FURTHER ORDERED** that:

A.     No later than sixty (60) days from the date of the entry of this Order, the Receiver shall file and serve on the parties a report (the "Final Report") to the Court that details the steps taken to dissolve the Receivership estate. The Final Report must include an accounting of the Receivership estate's finances and total assets and a description of what other actions, if any, must be taken to wind down the Receivership.

B.     The Receiver shall mail copies of the Final Report to all known creditors of the Receivership Defendants with a notice stating that any objections to paying any assets of the Receivership Defendants to satisfy the Receiver's costs and expenses and the monetary judgment set forth in this Order must be submitted to the Court and served by mail upon the Receiver and the parties within thirty (30) days of the mailing of the Final Report.

C.     No later than fifteen (15) days after submission of the Final Report, the Receiver shall file an application for payment of compensation and expenses associated with his performance of his duties as Receiver.

D.     The Court will review the Final Report and any objections to the report and, absent a valid objection, will issue an order directing that the Receiver:

1.     Pay the reasonable costs and expenses of administering the Receivership, including compensation of the Receiver and the Receiver's personnel authorized by Section XI of this Order or other

-25-

orders of this Court and the actual out-of-pocket costs incurred by the Receiver in carrying out his duties;

2.    Pay all remaining funds to the FTC or its designated agent to reduce the monetary judgment in Section VI.

E.    If subsequent actions (such as the completion of tax returns or further actions to recover funds for the Receivership Estate) are appropriate, the Receiver shall file an additional report or reports (the "Supplemental Reports") describing the subsequent actions and a subsequent application for the payment of fees and expenses related to the subsequent acts.

F.    With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a Supplemental Report.  If the Receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve fund after the payment of fees and expenses approved by the Court in response to such a supplemental application, all funds in the reserve funds shall be immediately paid to the FTC or its designated agent.

## XIII.

## COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that Defendants shall, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's Complaint, cooperate in good faith with the FTC and appear at such places and times as the FTC shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the FTC.  If requested in

writing by the FTC, Defendants shall appear and provide truthful testimony in any trial, deposition, or other proceeding related to or associated with the transactions or the occurrences that are the subject of the Complaint, without the service of a subpoena.

The Defendants shall also cooperate fully to assist the Commission in identifying the name, address, telephone number, date of purchase, program or product purchased, total amount paid, amount of any full or partial refund or chargeback, and payment information for consumers who were charged by Defendants, and any further information the Commission deems necessary to effectuate any redress program for consumers.

## XIV.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of (1) monitoring and investigating compliance with any provision of this Order and (2) investigating the accuracy of any of Defendants' Financial Statements upon which the Commission's agreement to this Order is expressly premised:

A.    Within ten (10) days of receipt of written notice from a representative of the Commission, the Defendants each shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in each of the Defendant's possession or direct or indirect control to inspect the business operation;

B.    In addition, the Commission is authorized to use all other lawful means, including but not limited to:

1.    obtaining discovery from any person, without further leave of court, using the procedures prescribed by Rules 30, 31, 33, 34, 36, 45 and

1   69 of the Federal Rules of Civil Procedure;

2       2.    having its representatives pose as consumers and suppliers to the

3           Defendants, their employees, or any other entity managed or

4           controlled in whole or in part by any of the Defendants, without the

5           necessity of identification or prior notice; and

6     C.    Defendants each shall permit representatives of the Commission to

7   interview any employer, consultant, independent contractor, representative, agent, or

8   employee who has agreed to such an interview, relating in any way to any conduct subject

9   to this Order.  The person interviewed may have counsel present.

10   *Provided however*, that nothing in this Order shall limit the Commission's lawful use of

11   compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49,

12   57b-1, to obtain any documentary material, tangible things, testimony, or information

13   relevant to unfair or deceptive acts or practices in or affecting commerce (within the

14   meaning of 15 U.S.C. § 45(a)(1)).

15   <div align="center">**XV.**</div>

16   <div align="center">**COMPLIANCE REPORTING**</div>

17     **IT IS FURTHER ORDERED** that, in order that compliance with the provisions

18   of this Order may be monitored:

19     A.    For a period of five (5) years from the date of entry of this Order,

20       1.    Each Individual Defendant shall notify the Commission of the

21           following:

22           a.    Any changes in such Defendant's residence, mailing

23               addresses, and telephone numbers, within ten (10) days of the

24               date of such change;

25

26   <div align="center">-28-</div>

b.    Any changes in such Defendant's employment status (including self-employment), and any change in such Defendant's ownership in any business entity within ten (10) days of the date of such change.  Such notice shall include the name and address of each business that such Defendant is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of such Defendant's duties and responsibilities in connection with the business or employment; and

c.    Any changes in such Defendant's name or use of any aliases or fictitious names within ten (10) days of the date of such change;

2.    Defendants shall notify the Commission of any changes in structure of any business entity that any Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, *provided that*, with respect to any such change in the business entity about which a Defendant learns less than thirty (30) days prior to the date such action is to take place,

1      such Defendant shall notify the Commission as soon as is practicable

2      after obtaining such knowledge.

3      B.      One hundred eighty (180) days after the date of entry of this Order and

4  annually thereafter for a period of five (5) years, Defendants each shall provide a written

5  report to the FTC, which is true and accurate and sworn to under penalty of perjury,

6  setting forth in detail the manner and form in which they have complied and are

7  complying with this Order.  This report shall include, but not be limited to:

8          1.      For each Individual Defendant:

9              a.      such Defendant's then-current residence address, mailing

10             addresses, and telephone numbers;

11             b.      such Defendant's then-current employment status (including

12             self-employment), including the name, addresses, and

13             telephone numbers of each business that such Defendant is

14             affiliated with, employed by, or performs services for; a

15             detailed description of the nature of the business; and a

16             detailed description of such Defendant's duties and

17             responsibilities in connection with the business or

18             employment; and

19             c.      any other changes required to be reported under Subsection A

20             of this Section.

21         2.      For all Defendants:

22             a.      a copy of each acknowledgment of receipt of this Order,

23             obtained pursuant to the Section titled "Distribution of

24             Order"; and

25

26                                              -30-

1            b.     any other changes required to be reported under Subsection A

2               of this Section.

3     C.     Each Defendant shall notify the Commission of the filing of a bankruptcy

4 petition by such Defendant within fifteen (15) days of filing.

5     D.     For the purposes of this Order, Defendants shall, unless otherwise directed

6 by the Commission's authorized representatives, send by overnight courier all reports and

7 notifications required by this Order to the Commission, to the following address:

8               Associate Director for Enforcement
              Federal Trade Commission

9               600 Pennsylvania Avenue, N.W., Room NJ-2122
              Washington, D.C. 20580

10              RE: *FTC v. Infusion Media, Inc.*

11 *Provided* that, in lieu of overnight courier, Defendants may send such reports or

12 notifications by first-class mail, but only if Defendants contemporaneously send an

13 electronic version of such report or notification to the Commission at DEBrief@ftc.gov.

14     E.     For purposes of the compliance reporting and monitoring required by this

15 Order, the Commission is authorized to communicate directly with each Defendant.

16 <div align="center">**XVI.**</div>

17 <div align="center">**RECORDKEEPING**</div>

18     **IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of

19 entry of this Order, the Corporate Defendants, and the Individual Defendants for any

20 business for which they, individually or collectively, are the majority owner or directly or

21 indirectly control, are hereby restrained and enjoined from failing to create and retain the

22 following records:

23     A.     Accounting records that reflect the cost of goods or services sold, revenues

24 generated, and the disbursement of such revenues;

25

26 <div align="center">-31-</div>

B.     Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.     Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.     Complaints and refund requests (whether received directly or indirectly, such as through a third party) and any responses to those complaints or requests;

E.     Copies of all sales scripts, web pages, training materials, advertisements, or other marketing materials; and

F.     All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## XVII.

## DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of the Order as directed below:

A.     Corporate Defendant:  Each Corporate Defendant must deliver, through the Receiver, a copy of this Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and representatives who engage in conduct related to the

1   subject matter of the Order; and (3) any business entity resulting from any change in

2   structure set forth in Subsection A.2 of the Section titled "Compliance Reporting."  For

3   current personnel, delivery shall be within five (5) days of service of this Order upon such

4   Defendant.  For new personnel, delivery shall occur prior to them assuming their

5   responsibilities.  For any business entity resulting from any change in structure set forth

6   in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least

7   ten (10) days prior to the change in structure.

8        B.    Individual Defendant as control person:  For any business that an Individual

9   Defendant controls, directly or indirectly, or in which such Defendant has a majority

10  ownership interest, such Defendant must deliver a copy of this Order to (1) all principals,

11  officers, directors, and managers of that business; (2) all employees, agents, and

12  representatives of that business who engage in conduct related to the subject matter of the

13  Order; and (3) any business entity resulting from any change in structure set forth in

14  Subsection A.2 of the Section titled "Compliance Reporting."  For current personnel,

15  delivery shall be within five (5) days of service of this Order upon such Defendant.  For

16  new personnel, delivery shall occur prior to them assuming their responsibilities.  For any

17  business entity resulting from any change in structure set forth in Subsection A.2 of the

18  Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the

19  change in structure.

20       C.    Individual Defendant as employee or non-control person:  For any business

21  where an Individual Defendant is not a controlling person of a business but otherwise

22  engages in conduct related to the subject matter of this Order, such Defendant must

23  deliver a copy of this Order to all principals and managers of such business before

24  engaging in such conduct.

25

26                                    -33-

1    D.    Defendants must secure a signed and dated statement acknowledging

2  receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy

3  of the Order pursuant to this Section.

4  <center>**XVIII.**</center>

5  <center>**ACKNOWLEDGMENT OF RECEIPT OF ORDER**</center>

6    **IT IS FURTHER ORDERED** that each Defendant, within five (5) business days

7  of receipt of this Order as entered by the Court, must submit to the Commission a truthful

8  sworn statement acknowledging receipt of this Order.

9  <center>**XIX.**</center>

10  <center>**RETENTION OF JURISDICTION**</center>

11    **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

12  matter for purposes of construction, modification, and enforcement of this Order.

13

14    IT IS SO ORDERED this 4th day of October, 2010.

15

16    _____

17    Gloria M. Navarro
     United States District Judge

18

19

20

21

22

23

24

25

26                                    -34-

1    SO STIPULATED AND AGREED:

2

3    FOR DEFENDANTS INFUSION MEDIA, INC.; WEST COAST
     INTERNET MEDIA, INC.; TWO WARNINGS, LLC; TWO PART
     INVESTMENTS, LLC; AND PLATINUM TELESERVICES, INC.

4

5    _____      Date: 8/6/10
     MATTHEW L. LEWIS
6    D. ZACHARY WISEMAN
     Ray Quinney & Nebeker P.C.
7    36 South State Street, Suite 1400
     Salt Lake City, UT  84111
8    (801) 323-3338/3349
     (801) 326-3395 (facsimile)
9    mlewis@rqn.com; zwiseman@rqn.com

10   COUNSEL FOR INFUSION MEDIA, INC.;
     WEST COAST INTERNET MEDIA, INC.;
11   TWO WARNINGS, LLC; TWO PART
     INVESTMENTS, LLC; AND PLATINUM
12   TELESERVICES, INC.

13

14   FOR DEFENDANTS JONATHAN EBORN; INFUSION MEDIA,
     INC.; WEST COAST INTERNET MEDIA, INC.; TWO WARNINGS,
15   LLC; AND TWO PART INVESTMENTS, LLC

16   _____      Date: 7/13/10
17   JONATHAN EBORN, INDIVIDUALLY AND
     AS AN OFFICER OF INFUSION MEDIA,
18   INC.; WEST COAST INTERNET MEDIA,
     INC.; TWO WARNINGS, LLC; AND TWO
19   PART INVESTMENTS, LLC

20

21   FOR DEFENDANTS STEPHANIE BURNSIDE AND WEST COAST
     INTERNET MEDIA, INC.

22

23   _____      Date: 7/13/10
     STEPHANIE BURNSIDE, INDIVIDUALLY
24   AND AS AN OFFICER OF WEST COAST
     INTERNET MEDIA, INC.

25

26                           -35-

1    FOR DEFENDANTS MICHAEL McLAIN MILLER; INFUSION
      MEDIA, INC.; TWO WARNINGS, LLC; AND TWO PART
2    INVESTMENTS, LLC

3

                                  Date: 15 July 2010

4    MICHAEL McLAIN MILLER,
      INDIVIDUALLY AND AS AN OFFICER OF
5    INFUSION MEDIA, INC.; WEST COAST
      INTERNET MEDIA, INC.; TWO
6    WARNINGS, LLC; AND TWO PART
      INVESTMENTS, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                            -36-

**FOR DEFENDANTS TONY NORTON AND PLATINUM
TELESERVICES, INC.**

Date: 7-21-2010

**TONY NORTON, INDIVIDUALLY AND AS
AN OFFICER OF PLATINUM
TELESERVICES, INC.**


**FOR THE PLAINTIFF
FEDERAL TRADE COMMISSION:**

Date: 10/1/10

**DANIEL O. HANKS
KATHLEEN BENWAY**
Attorneys
Federal Trade Commission
Washington, D.C. 20580
(202) 326-2472, -2024
(202) 326-3395 (facsimile)
dhanks@ftc.gov; kbenway@ftc.gov

-37-

**ATTACHMENT A**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

INFUSION MEDIA, INC., *et al.,*

Defendants.

**Civil Action No. 2:09-cv-01112-GMN-LRL**

**ACCOUNT SCHEDULE**

The following list identifies the accounts referred to in Section VI.A.9 of the Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief as to Infusion Media, Inc.; West Coast Internet Media, Inc.; Two Warnings, LLC; Two Part Investments, LCC; Platinum Teleservices, Inc.; Jonathan Eborn; Stephanie Burnside; Michael Mclain Miller; and Tony Norton:

| DBA | Account Number |
|---|---|
| Income Initiative Pro | xxxxxxxxxx383494 |
| Income Initiative Pro | xxxxxxxxxx385804 |
| Income Initiative Pro | xxxxxxxxxx390564 |
| Income Initiative Pro | xxxxxxxxxx391323 |
| Income Initiative Pro | xxxxxxxxxx391968 |
| Income Initiative Pro | xxxxxxxxxx383551 |
| Income Initiative Pro | xxxxxxxxxx386554 |
| Income Initiative Pro | xxxxxxxxxx390820 |
| Income Initiative Pro | xxxxxxxxxx392388 |
| Income Initiative Pro | xxxxxxxxxx393162 |
| Mony Tree Systems | xxxxxxxxxx384518 |

| | |
|---|---|
| Mony Tree Systems | xxxxxxxxxx398658 |
| Mony Tree Systems | xxxxxxxxxx399466 |
| Mony Tree Systems | xxxxxxxxxx400090 |
| Mony Tree Systems | xxxxxxxxxx401775 |
| Mony Tree Systems | xxxxxxxxxx405404 |
| Mony Tree Systems | xxxxxxxxxx405453 |
| Mony Tree Systems | xxxxxxxxxx388253 |
| Mony Tree Systems | xxxxxxxxxx385135 |
| Mony Tree Systems | xxxxxxxxxx397007 |
| Mony Tree Systems | xxxxxxxxxx400793 |
| Mony Tree Systems | xxxxxxxxxx398104 |
| Mony Tree Systems | xxxxxxxxxx402070 |
| Mony Tree Systems | xxxxxxxxxx403417 |
| Mony Tree Systems | xxxxxxxxxx404373 |
| Mony Tree Systems | xxxxxxxxxx405057 |
| Mony Tree Systems | xxxxxxxxxx384765 |
| Mony Tree Systems | xxxxxxxxxx389798 |
| Mony Tree Systems | xxxxxxxxxx400231 |
| Mony Tree Systems | xxxxxxxxxx401254 |
| Mony Tree Systems | xxxxxxxxxx395878 |
| Mony Tree Systems | xxxxxxxxxx403490 |
| Mony Tree Systems | xxxxxxxxxx404068 |
| Mony Tree Systems | xxxxxxxxxx405263 |
| Mony Tree Systems | xxxxxxxxxx383239 |
| Mony Tree Systems | xxxxxxxxxx386489 |
| Mony Tree Systems | xxxxxxxxxx392347 |
| Mony Tree Systems | xxxxxxxxxx395597 |
| Mony Tree Systems | xxxxxxxxxx398591 |
| Mony Tree Systems | xxxxxxxxxx400041 |

| | |
|---|---|
| Mony Tree Systems | xxxxxxxxxx401692 |
| Mony Tree Systems | xxxxxxxxxx405479 |
| Mony Tree Systems | xxxxxxxxxx405503 |
| Mony Tree Systems | xxxxxxxxxx383296 |
| Mony Tree Systems | xxxxxxxxxx385911 |
| Mony Tree Systems | xxxxxxxxxx392099 |
| Mony Tree Systems | xxxxxxxxxx392834 |
| Mony Tree Systems | xxxxxxxxxx398534 |
| Mony Tree Systems | xxxxxxxxxx399995 |
| Mony Tree Systems | xxxxxxxxxx401569 |
| Mony Tree Systems | xxxxxxxxxx405602 |
| Mony Tree Systems | xxxxxxxxxx405610 |
| Mony Tree Systems | xxxxxxxxxx384450 |
| Mony Tree Systems | xxxxxxxxxx399904 |
| Mony Tree Systems | xxxxxxxxxx401973 |
| Mony Tree Systems | xxxxxxxxxx403185 |
| Mony Tree Systems | xxxxxxxxxx405149 |
| Mony Tree Systems | xxxxxxxxxx389442 |
| Mony Tree Systems | xxxxxxxxxx404191 |
| Safelock ID | xxxxxxxxxx436532 |
| Safelock ID | xxxxxxxxxx438058 |
| Safelock ID | xxxxxxxxxx438074 |
| Safelock ID | xxxxxxxxxx439098 |
| Safelock ID | xxxxxxxxxx439130 |
| Safelock ID | xxxxxxxxxx442993 |
| Safelock ID | xxxxxxxxxx436508 |
| Safelock ID | xxxxxxxxxx438595 |
| Safelock ID | xxxxxxxxxx438629 |
| Safelock ID | xxxxxxxxxx438819 |

| Safelock ID | xxxxxxxxxx438983 |
|---|---|
| Safelock ID | xxxxxxxxxx442944 |
| Safelock ID | xxxxxxxxxx436516 |
| Safelock ID | xxxxxxxxxx438504 |
| Safelock ID | xxxxxxxxxx438520 |
| Safelock ID | xxxxxxxxxx439007 |
| Safelock ID | xxxxxxxxxx439031 |
| Safelock ID | xxxxxxxxxx442951 |
| Safelock ID | xxxxxxxxxx436557 |
| Safelock ID | xxxxxxxxxx438132 |
| Safelock ID | xxxxxxxxxx438157 |
| Safelock ID | xxxxxxxxxx438751 |
| Safelock ID | xxxxxxxxxx438769 |
| Safelock ID | xxxxxxxxxx442787 |
| Safelock ID | xxxxxxxxxx436540 |
| Safelock ID | xxxxxxxxxx438108 |
| Safelock ID | xxxxxxxxxx438116 |
| Safelock ID | xxxxxxxxxx438777 |
| Safelock ID | xxxxxxxxxx438785 |
| Safelock ID | xxxxxxxxxx442928 |
| Safelock ID | xxxxxxxxxx436565 |
| Safelock ID | xxxxxxxxxx438165 |
| Safelock ID | xxxxxxxxxx438173 |
| Safelock ID | xxxxxxxxxx438710 |
| Safelock ID | xxxxxxxxxx438736 |
| Safelock ID | xxxxxxxxxx442779 |
| Safelock ID | xxxxxxxxxx436573 |
| Safelock ID | xxxxxxxxxx438249 |
| Safelock ID | xxxxxxxxxx438298 |

| | |
|---|---|
| Safelock ID | xxxxxxxxxx438645 |
| Safelock ID | xxxxxxxxxx438678 |
| Safelock ID | xxxxxxxxxx442738 |
| Safelock ID | xxxxxxxxxx436581 |
| Safelock ID | xxxxxxxxxx438215 |
| Safelock ID | xxxxxxxxxx438231 |
| Safelock ID | xxxxxxxxxx438694 |
| Safelock ID | xxxxxxxxxx438702 |
| Safelock ID | xxxxxxxxxx442761 |